2 P.3d 144

**In the Matter of DEFENDANT A, Attorney at Law,**

**DEFENDANT A, Defendant–Petitioner,**

v.

**IDAHO STATE BAR, Plaintiff–Respondent.**

No. 25293.

Supreme Court of Idaho.
Boise, January 2000 Term.

May 15, 2000.

Sallaz Law Offices, Chtd., Boise, for petitioner.

Michael J. Oths, Idaho State Bar, Boise, for respondent.

TROUT, Chief Justice

This is an attorney discipline case. Defendant A appeals from a decision rendered by a hearing committee of the Idaho State Bar Professional Conduct Board (Board). The Board has recommended assessing a public reprimand and six months probation against Defendant A for violating I.R.P.C. 1.15(a) which prohibits commingling of funds and I.R.P.C. 3.3(a)(1) for making a false statement to a tribunal. The Bar asserts that Defendant A should also be sanctioned for making a false statement during a disciplinary investigation.

## I.

## BACKGROUND

Defendant A became a member of the Idaho State Bar in 1991 and has no prior disciplinary record. In February of 1994, Defendant A joined a law firm in which the attorneys shared overhead expenses but individually retained any fees generated. Defendant A did not have a client trust account in his name, but was permitted to use the firm trust account. Defendant A typically

charged a flat fee for his services and had not had occasion to use the firm trust account prior to the circumstances of this case.

Michael Krall (Krall) retained Defendant A in November of 1994. Defendant A did not require a retainer from Krall and believed Krall's promises to pay for services. Defendant A represented Krall on at least three different matters: (1) a criminal case in Ada County; (2) a criminal case in Canyon County; and (3) a civil case involving the Idaho Attorney General. Krall's legal matters arose from Krall's acceptance of deposits on house painting contracts which he allegedly did not complete.

Defendant A determined that Krall's legal matters could be resolved if restitution were paid to the victims who had paid Krall but had not received painting services and advised Krall that $2000 might be sufficient to settle the criminal claims against him. Krall contacted Henry Storm, his wife's uncle, who agreed to loan him the money. On or about February 21, 1995, Krall delivered a $2,000 check from Storm to Defendant A, which Defendant A had instructed his secretary to place in the firm trust account. Defendant A's secretary failed to deposit the check in the firm trust account and, instead, placed the money in Defendant A's personal account.

A pretrial conference was held on March 6, 1995, in Krall's Canyon County criminal case at which the parties agreed to dismiss the case if Krall would pay $267.75 for a ladder which he had not returned. Defendant A wrote a personal check for $267.75 and settled the matter. Defendant A then instructed his secretary to transfer $267.75 from the firm trust account into his personal account.

As of March 24, 1995, Defendant A believed that Krall's check had been deposited into the firm trust account. During this time period, Defendant A had a discussion with the law firm accountant regarding Defendant A's share of the overhead and the money Defendant A believed was in the firm trust account. Defendant A did not specifically inquire into the status of the $2,000 deposit and the accountant was unable to provide any information because he had not yet rec-

onciled the trust account with respect to each attorney.

Defendant A filed a motion to withdraw from representation of Krall and a supporting affidavit on April 4, 1995. Defendant A stated in the April 4 affidavit: "I have not received a single penny despite his continuing promises to pay." Krall then told Defendant A to apply the balance of the $2,000 to his fees and Defendant A withdrew his motion to withdraw. Defendant A then asked his secretary to withdraw the balance of Krall's funds, approximately $1,700, from the firm trust account. The secretary informed Defendant A that the $1,700 had never been in the firm's trust account but had been deposited in Defendant A's personal account. Defendant A asserts it was at this point, approximately mid-April, prior to his April 25, 1995, affidavit, that Defendant A first discovered Krall's funds had not been placed in the firm trust account.

Defendant A then filed a request for a free preliminary hearing transcript on April 25, 1995, asserting that Krall was indigent. In his supporting affidavit, Defendant A stated: "I have received no payment from Defendant for services rendered, and based upon my familiarity with the Defendant, his family, and his economic condition and ability, I do not expect to receive any payments." Defendant A continued to represent Krall until August, 1995, when he withdrew.

The Bar wrote to Defendant A sometime prior to May 10, 1996, apparently related to a complaint Krall had made against Defendant A. While the record before this Court is not complete, it reflects that there were several letters back and forth between bar counsel and Defendant A relating to the $2,000.00 and its whereabouts. On June 24, 1996, bar counsel requested billing records indicating when the funds had been transferred out of the firm trust account, as well as the corresponding trust account records. Defendant A did not provide such records but instead, after at least one other request from bar counsel, sent a letter to his lawyer on June 16, 1997, which was forwarded to the Bar. The letter stated that "[w]hat remaining bank statements I can find indicate that I at least had the $1,700 in my account until the

end of April, right after the withdrawal of my motion to withdraw."

Bar counsel's investigation resulted in a complaint being filed against Defendant A by the Idaho State Bar on November 7, 1997. The complaint contained the following five counts: (1) Count I, commingling; (2) Count II, misappropriation; (3) Count III, false statement to client; (4) Count IV, false statement to Idaho State Bar; and (5) Count V, false statement to a tribunal. The matter was heard by a hearing committee of the Professional Conduct Board on October 27, 1998.

The Board determined that Defendant A violated Idaho Rule of Professional Conduct 1.15(a) and Idaho Bar Commission Rule 302(b) by commingling Krall's funds with his personal funds. The Board also concluded that the parties had impliedly consented to try the issue of whether Defendant A made a false statement to a tribunal in the April 25, 1995, affidavit and found that the affidavit contained a false statement. The Board further determined that the Bar had not proven by clear and convincing evidence the facts necessary to sustain Counts II, III and IV. The Board recommended that Defendant A receive a public reprimand and six months probation.

## II.

### STANDARD OF REVIEW

In attorney discipline cases, the burden is on the Idaho State Bar to establish the alleged misconduct by clear and convincing evidence. *Matter of Topp,* 129 Idaho 414, 415–16, 925 P.2d 1113, 1114–15 (1996); *see also* I.B.C.R. 522(f). Clear and convincing evidence refers to "A degree of proof greater than a mere preponderance." *Matter of Jenkins,* 120 Idaho 379, 383, 816 P.2d 335, 339 (1991). On appeal, the Court gives great weight to the findings of the Board, but makes an independent review of the record to determine whether the findings are supported. *Id.* at 383–84, 816 P.2d at 339–40.

## III.

### COMMINGLING CLIENT FUNDS

Rule 1.15(a) requires a lawyer to "hold property of clients or third persons

that is in a lawyer's possession ... separate from the lawyer's own property." I.R.P.C. 1.15(a). The Board determined, and the parties do not dispute, that Defendant A commingled Krall's funds in his personal account. In defense, Defendant A argues that he was unaware of the secretary's mistake until mid-April when he asked her to transfer the remaining money deposited by Krall from his trust account into his personal account. Defendant A offers no explanation, however, for why he failed to examine his bank statements for two months and discover the commingling error. It also appears from his bank records that there would not have been enough money in Defendant A's personal account to cover checks he had issued in March, had the Krall funds not been in that account. Thus, Defendant A clearly should have been aware that some extra money had come into his personal account, which should have caused him to make further inquiry. Based upon that, there is clear and convincing evidence supporting the Board's finding that Defendant A commingled client funds in his account in violation of I.R.P.C. 1.15(a).

## IV.

### FALSE STATEMENT TO A TRIBUNAL

Rule 3.3(a)(1) requires a lawyer "shall not knowingly ... make a false statement of material fact or law to a tribunal." Defendant A argues the Bar's complaint only made reference to false statements within the April 4, 1995 affidavit and, thus, he had no notice regarding any issue involving the April 25, 1995, affidavit. The question of whether an attorney in a bar proceeding is properly on notice of claimed violations of the code of ethics was previously addressed by this Court in *Idaho State Bar v. Tway,* 128 Idaho 794, 919 P.2d 323 (1996). In that case, the Bar filed a three-count complaint against Tway, alleging violations involving lack of diligence, failure to communicate and misconduct through dishonesty. In arguing against the proposed sanctions, Tway asserted that the Board should not have found that he neglected his client's case pursuant to

I.R.P.C. 1.3 because the Bar's complaint did not allege neglect. The Court held that the issue of neglect was tried by the implied consent of the parties because the issue of neglect is inherent in any charged violation of the rules relating to lack of diligence, and Tway himself testified at length about his delay in filing a claim on behalf of his client.

In this case, however, we agree that Defendant A was not afforded sufficient notice of the complaint about an alleged false statement in his April 25, 1995, affidavit. Although the record contains evidence relevant to the truthfulness of Defendant A's April 25, 1995, affidavit, this evidence was also relevant to the issue of whether Defendant A had permission to use Krall's money or, in the alternative, had misappropriated the money. It therefore does not appear the parties understood the evidence concerning the April 25, 1995, affidavit was aimed at the specific issue of whether Defendant A made a false statement to a tribunal in that affidavit. We conclude there was not sufficient notice to Defendant A that he should be prepared to respond at the hearing to allegations regarding an entirely different affidavit than the one described in the Bar complaint and, therefore, the Board should not have used that as a basis for recommending disciplinary sanctions against the attorney.

## V.

## FALSE STATEMENT TO THE IDAHO STATE BAR

Rule 8.1(a) prohibits a lawyer from knowingly making "a false statement of material fact" in connection with a bar disciplinary matter. Rule 8.4(c) similarly prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation". The Bar alleged that Defendant A had made false statements to it during the course of the investigation. The Board determined that this allegation was not proven. We have reviewed the record and conclude that the Board's determination is not clearly erroneous.

## VI.

## CONCLUSION

The Board's finding that Defendant A violated I.R.P.C. 1.15(a) by commingling funds is supported by clear and convincing evidence. The Board's finding that Defendant A did not make a false statement to the Idaho State Bar in violation of I.R.P.C. 8.1(a) is also supported by clear and convincing evidence. The Board erred, however, in determining that the issue concerning whether Defendant A made a false statement to a tribunal in his April 25, 1995, affidavit was tried by the implied consent of the parties and that should not be a basis for finding a violation of the Rules of Professional Conduct. Given Defendant A's commingling violation, it is this Court's conclusion that a private reprimand is the appropriate sanction.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL concur.